UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                              File No. 1:97-cr-82

v.

                              HON. ROBERT HOLMES BELL

CHARLES WASHPUN,

        Defendant.
                                  /

**OPINION**

This matter is before the Court on remand from the Court of Appeals for a review of the record to determine whether Defendant is eligible for a reduction of sentence under Amendment 782 of the Guidelines. Upon review, the Court finds that he is not.

**I. Background**

In 1998, Defendant Charles Washpun was convicted of conspiracy with intent to possess and distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base. (Second Superseding Indictment, ECF No. 264; Verdict, ECF No. 458.) At sentencing, Defendant's base offense level of 38 was calculated using § 2D1.1(c)(1) of the Sentencing Guidelines, which at the time required a finding that he is responsible for at least 1.5 kilograms of cocaine base.

In the Presentence Investigation Report ("PSR"), the probation department estimated that Defendant was responsible for 66 kilograms of cocaine base, based largely on testimony

by Keylen Blackmon, one of the leaders of the conspiracy. The PSR recommended that the Court consider an upward departure from the Sentencing Guidelines.

At the sentencing hearing, Defendant's attorney objected to an upward departure, and objected to the PSR's estimate of drug quantity. According to counsel, Blackmon's testimony regarding the period from 1991 to 1993 established that Defendant was responsible for only 26 kilograms of cocaine base. In addition, counsel argued that Blackmon's testimony about the distribution of cocaine base to co-conspirator Darryl Ford from 1995 to 1997 should not be attributed to Defendant, or at the very least, Defendant should be held responsible for only half that amount, which would support a finding that Defendant was responsible for a total of only 46 kilograms of cocaine base, not 66 kilograms. In response, the Government indicated that it was not seeking an upward departure, and the Court noted that it was not considering one. (Sentencing Tr. 7, ECF No. 1400-1.) Counsel conceded that "we're obviously talking about over 1.5 kilograms." (*Id.* at 6.) Thus, the Court sentenced Defendant within the Guidelines range to 300 months in prison.

In 2014, Defendant filed a motion for reduction of his sentence in accordance with Amendment 782 to the Guidelines, which increased to 25.2 kilograms the quantity of cocaine base required to qualify for a base offense level of 38. The Court directed the probation department to prepare a sentence modification report ("SMR") and appointed counsel for Defendant. The SMR concluded that Defendant was not eligible for a reduction because his criminal activity involved at least 66 kilograms of cocaine base. (SMR, ECF No. 1354, PageID.1408.) Defendant's counsel agreed that Defendant was not eligible for a reduction

because his sentence was based on "a drug weight of 66 kilograms of cocaine base." (Response by Def., ECF No. 1361.) The Court accepted this concession and denied the motion.

Defendant appealed the Court's decision, and the Court of Appeals vacated it and remanded the matter to this Court for a determination of "whether the record supports a finding that Washpun possessed and distributed more than 25.2 kilograms of cocaine base." *United States v. Washpun*, No. 15-1815, slip op. at 8 (6th Cir. May 23, 2016). Although Defendant's counsel (at sentencing and in connection with the motion for reduction of sentence) conceded that Defendant was responsible for a quantity greater than 25.2 kilograms of cocaine base, the Court of Appeals held that counsel's comments could not be considered because "they were made in a different context." *Id.*

In response to the mandate of the Court of Appeals, this Court appointed counsel for Defendant and ordered the parties to brief the issue. The Government has filed a brief arguing that, under a conservative estimate, Defendant is responsible for at least 58.07 kilograms of cocaine base. (ECF No. 1433.) Defendant has filed a reply brief arguing that he is responsible for only 15.31 kilograms. (ECF No. 1443.)

## II. Record Evidence

At trial, Buddy Marshall testified that he started selling "crack" (i.e. cocaine base) with Defendant in 1993. (Excerpt of Trial Tr.–Marshall 13, ECF No. 1433-1.) Marshall and Defendant got their cocaine from Keylen Blackmon. (*Id.* at 14.)

Ambrose Williams testified that he would get crack from Blackmon and drop it off at "houses," including Defendant's house. (Excerpt of Trial Tr.–Williams 11, ECF No. 1433-1.) Once or twice in 1991, Williams saw Blackmon bring a package of crack the size of a tennis ball to Defendant's house. (*Id.* at 16.) On another occasion in 1991, Williams himself delivered a tennis-ball sized package of crack to Defendant. (*Id.*)

Blackmon testified that he started selling "crack" to Rodney Atkinson "around 1990." (Excerpt of Trial Tr.–Blackmon 22-23, ECF No. 1433-1.) That same year, Blackmon began distributing powder cocaine to Defendant. (*Id.* at 26.) Blackmon obtained his cocaine from Chicago and split it with two other individuals. (*Id.* at 29.) They would cook it to make cocaine base. (*Id.*) At one point, Blackmon testified that he started selling cocaine in "rock" form "around maybe late '91, '92." (Def.'s Excerpt of Trial Tr., ECF No. 1401-1, PageID.1579.) At another point, he stated that he started selling cocaine base "[a]round 1991." (Excerpt of Trial Tr.–Blackmon 31, ECF No. 1433-1.)

From 1991 to 1993, Blackmon estimated that he distributed 4.5 ounces of cocaine base to Defendant, "two or three times a week," on average. (*Id.* at 31.) During this time period, Defendant was working with Darryl Ford. According to Blackmon, working with Defendant and Ford "was like working with the same person." (*Id.* at 33.) Blackmon "could deliver it to [Ford] or [Defendant]. It didn't make a difference." (*Id.*)

In 1993, Blackmon moved to Atlanta, but he maintained his business selling cocaine base in Kalamazoo, Michigan. (*Id.* at 38-39.) When Blackmon returned to Kalamazoo in 1995, Ford and Defendant were among his customers. (*Id.* at 40-41.) Starting in 1995,

Blackmon distributed 9 to 18 ounces of cocaine base per week to Ford, who was still working with Defendant. (*Id.* at 43-44.) According to Blackmon, he "could get in contact with Darryl Ford or [Defendant]. It was – it was the same." (*Id.* at 44.) Ford and Defendant served the same customers, and "[e]verybody would know to go to [Defendant]." (*Id.* at 44-45.) Blackmon's distribution ceased when he was arrested and incarcerated in June of 1997. (*Id.* at 43, 105.)

### III. Analysis

When determining the amount of cocaine base that should be attributed to Defendant, the Government and Defendant have arrived at very different amounts. The biggest reason for the difference is their choice of time periods during which Defendant was receiving cocaine base from Blackmon.

<u>1991 to 1993</u>

The Government assumes a time period of 24 months from 1991 to 1993 when Defendant was receiving approximately 4.5 ounces of cocaine base at least two times per week from Blackmon. But Defendant argues that the applicable time period should be 12 months. Defendant would exclude all of 1991 and all of 1993, because Blackmon stated that he switched from powder cocaine to cocaine base in "late" 1991, and he did not identify a specific date when he moved to Atlanta in 1993.

However, the record supports a period longer than 12 months. Blackmon unequivocally stated that he distributed 4.5 ounces of cocaine base to Defendant at least two times per week from 1991 to 1993, which necessarily means that he was distributing cocaine

base *in* 1991 and 1993, not just 1992. Moreover, Williams testified that he saw Blackmon deliver, and Williams himself delivered, tennis-ball sized packages of cocaine base to Defendant on two or three separate occasions in 1991. In addition, Marshall testified that he sold cocaine base with Defendant in 1993. Thus, the record supports a finding that Defendant was involved in distributing cocaine base in 1991, 1992, and 1993. Consequently, an estimate that is more consistent with the evidence, and yet one that is still very conservative, is that Defendant received at least 4.5 ounces of cocaine base two times per week for at least 14 months (i.e. from December 1, 1991, to January 31, 1993), which is 61 weeks. 9 ounces a week for 61 weeks is 549 ounces. At 35.27 ounces per kilogram, this equals 15.56 kilograms.

<u>1995 to June 1997</u>

For the period from 1995 to June 1997, the Government assumes two years and five months (124 weeks) of distribution by Blackmon to Defendant and Ford. This includes all of 1995, all of 1996, and 5 months in 1997 because Blackmon was incarcerated in June of that year. Defendant argues that the Court should exclude all of 1995 and assume 17 months (i.e. from January 1996 to the end of May 1997), because Blackmon did not indicate when he returned from Atlanta in 1995. However, Blackmon clearly testified that he distributed cocaine base to Ford and Washpun in 1995; thus, the record supports a finding that at least part of 1995 should be used. The Court will use a conservative estimate of 78 weeks, which includes the last month of 1995, all of 1996, and the first five months of 1997.

As to the frequency and quantity of distribution, the Government assumes 9 ounces per week. Defendant's calculation assumes 9 ounces every *other* week, ostensibly because Blackmon's estimate was primarily about distribution to Ford rather than Defendant. However, Blackmon also testified that his dealings with Ford and Defendant were like dealing with the same person. Ford and Defendant even served the same customers. In other words, Ford and Defendant were working together to distribute the cocaine base received from Blackmon.

According to the Guidelines, the relevant conduct for determining the base offense level includes:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were--
>
>> (i) within the scope of the jointly undertaken criminal activity,
>>
>> (ii) in furtherance of that criminal activity, and
>>
>> (iii) reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

U.S.S.G. § 1B1.3(a).

The record supports a finding that the cocaine base given to Ford was part of the same scheme undertaken by Defendant, Blackmon and Ford, acting in concert, to distribute those drugs. Thus, for purposes of sentencing, Defendant is responsible for the drugs distributed to Ford in 1995 to 1997.

78 weeks times 9 ounces per week is 702 ounces, which equals 19.90 kilograms. Adding this quantity to 15.56 kilograms for the period from 1991 to 1993 results in 35.46 kilograms, which is far greater than 25.2 kilograms of cocaine base.

Even if the Court were to attribute *half* of the 19.90 kilograms of cocaine base to Defendant, in line with Defendant's suggested calculation of 9 ounces every *other* week, the total amount for both time periods would be 25.51 kilograms, which is still greater than 25.2 kilograms.

Defendant urges the Court to use a conservative estimate *and* to err on the side of caution. The Court has done so. It used the lower amounts in the range of estimates provided by Blackmon. Blackmon testified that he distributed 4.5 ounces two or three times per week from 1991 to 1993. The Court assumed twice per week. The Court did not include the two or three large packages from Williams' testimony, and the Court included only one month in each of 1991 and 1993. Blackmon also testified that he distributed 9 to 18 ounces per week from 1995 to June 1997. The Court used the lower amount and included only one month in 1995. Indeed, the Court's total estimate for purposes of this Opinion is far lower than the 66

kilograms estimated by the PSR, and the 46 kilograms argued by Defendant's counsel at the initial sentencing hearing.

## IV. Conclusion

In short, the record supports a finding that Defendant is responsible for possession and distribution of more than 25.2 kilograms of cocaine base. Consequently, he is not eligible for reduction of his sentence under Amendment 782.

An order will enter consistent with this Opinion.


Dated: <u>September 6, 2016</u>          <u>/s/ Robert Holmes Bell          </u>
                                         ROBERT HOLMES BELL
                                         UNITED STATES DISTRICT JUDGE